OPINION OF THE COURT
 

 ADAMS, Circuit Judge.
 

 In this appeal, we are asked to decide whether the Bankruptcy Code prohibits a state college from retaining the transcript of a debtor whose educational loans were not dischargeable in a Chapter 7 proceeding. We hold that it does not.
 

 
 *164
 
 I
 

 Robert Johnson was graduated from Ed-inboro State College (Pennsylvania) in December, 1974. In 1980, he filed a Chapter 7 petition for an order of discharge in bankruptcy, which was granted in March, 1981. Shortly thereafter, Johnson filed a complaint in the bankruptcy court to determine whether a debt he owed Edinboro State was dischargeable. Through the College, he had received some $1700 from both the National Defense and the Direct Student Loan Programs.
 
 [1]
 
 Johnson averred that these debts were dischargeable under 11 U.S.C. § 523(a)(8) (Supp. V 1981) because they had become due over five years before his filing of a petition in bankruptcy and because they imposed an undue hardship on him as a debtor. Johnson also complained that the college had withheld his diploma and had denied him a transcript of his academic record, thus jeopardizing his professional advancement.
 

 The bankruptcy judge noted that payment of the educational loans should cause Johnson no hardship, since the quarterly payments were only $47.00 and the debtor’s current annual income was over $17,000.00. The bankruptcy judge also concluded that Johnson’s loans had not become due over five years before the filing of his petition and, as a result, were not dischargeable under the Bankruptcy Code. Nonetheless, he ordered that the college turn over to the debtor a diploma and a copy of his transcript.
 
 See Johnson v. Edinboro State College (In re Johnson),
 
 No. 80-2130 (Bankr.W.D.Pa. June 18, 1981).
 

 Upon Edinboro’s motion that the court reconsider the portion of its Order directing that a transcript be issued to the debtor, the bankruptcy judge asserted that the denial of a transcript violated the “fresh start” policy of the Bankruptcy Code.
 
 Johnson v. Edinboro State College (In re Johnson),
 
 28 B.R. 406 (Bkrtcy.W.D.Pa.1982). This judgment was affirmed by the district court.
 
 Johnson v. Edinboro State College (In re Johnson),
 
 No. 82-589 (W.D.Pa. Dec. 3, 1982). Edinboro’s petition for the allowance of an appeal was granted under Fed.R. App.P. 6.
 
 [2]
 
 We now reverse the judgment of the bankruptcy court.
 

 II
 

 The desire to give the debtor a “fresh start” is a key goal of the Bankruptcy Code, but it is only one of several policies that underlie this complex statute, policies that often come into conflict with one another. The trustee’s duty to marshal the assets of an estate in bankruptcy can, for example, seriously inhibit the capacity of a debtor to start anew. So, too, a legislative decision to exempt certain kinds of loans from discharge in bankruptcy can make it that much more difficult for a debtor to put the past behind. Nonetheless, courts are bound by Congressional judgments that general bankruptcy policy give way to more specific policy considerations.
 
 United States v. Sotelo,
 
 436 U.S. 268, 279, 98 S.Ct. 1795, 1802, 56 L.Ed.2d 275 (1978);
 
 In the Matter of Becker’s Motor Transport, Inc.,
 
 632 F.2d 242, 248 (3d Cir.1980),
 
 cert. denied,
 
 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981). Here, it is abundantly clear, from both the legislative history and the text of the Bankruptcy Code itself that Congress meant to bar the discharge of educational loans like those Johnson received through Edinboro State College.
 
 See
 
 H.R.Rep. No. 1232, 94th Cong., 2d Sess. 13, 80 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, 5787.
 

 In spite of the fact that Johnson had made no payments on his non-dischargeable educational loans, the bankruptcy judge ordered Edinboro to turn over to the debtor a copy of his college transcript. To do otherwise, the bankruptcy judge reasoned, would
 
 *165
 
 be to violate 11 U.S.C. § 525 (Supp. V 1981) which provides statutory protection from discrimination to those who file petitions under the Code.
 
 [3]
 
 The legislative history shows that, in drafting this provision, Congress intended to codify the result in
 
 Perez v. Campbell,
 
 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a state could not, without violating the fresh-start policy, refuse to renew a driver’s license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 81 (1978); H.Rep. No. 595, 95th Cong., 1st Sess. 366 (1977), U.S.Code Cong. & Admin.News 1978, 5787. The Court in
 
 Perez
 
 made clear that it did not question the state’s capacity to require proof of financial responsibility as a precondition for granting driving privileges. Rather the issue was “the power of a State to provid[e] that a discharge in bankruptcy of the automobile accident tort judgment shall have no effect on the judgment debt- or’s obligation to repay the judgment creditor.... ” 402 U.S. at 643, 91 S.Ct. at 1708. The Court’s disposition of this issue is reflected in the final portion of § 525,
 
 see
 
 note 2
 
 supra,
 
 which prohibits discrimination against a one-time petitioner who has not paid a debt that has been discharged under the Bankruptcy Code. In the present case, Johnson’s loans have not been discharged, indeed they are nondischargeable, and whatever remedies he may have against the college withholding his transcript, he cannot seek relief under § 525 of the Bankruptcy Code.
 

 Ill
 

 In support of the proposition that Edin-boro’s refusal to give Johnson a copy of his transcript violates the fresh-strt policy, the bankruptcy judge referred to a number of opinions, all b it two of which involve loans that had in fact been discharged in bankruptcy.
 
 Lee v. Bd. of Higher Ed.,
 
 1 B.R. 781 (S.D.N.Y.1979), is typical. That case was certified as a class action and was limited to certain graduates who “have received a final discharge in bankruptcy of their student loans and who thereafter have been denied access to their college records ... by reason of their failure to repay their educational loans.”
 
 Id.
 
 at 786. In holding that the college’s policy unconstitutionally violated plaintiff’s right to equal protection of the law, the district court carefully limited its holding:
 

 The underlying goal of the practice of denying transcripts to adjudicated bankrupts is the collection of debts that have been discharged; under
 
 Perez,
 
 such a state interest is
 
 not
 
 legitimate. Therefore, with respect to adjudicated bankrupts who have had their student loans discharged, i.e., the members of the certified class in the instant case, a deprivation of equal protection is made out. The Court declines to determine if persons who had not had their student loans discharged in bankruptcy have been denied equal protection, since such persons, by definition, are not members of the certified class in the instant case.
 

 1 B.R. at 788.
 

 The court in
 
 Lee
 
 concluded by examining the problem Congress intended to address in amending the bankruptcy laws governing the dischargeability of student loans, namely, the misuse of the system for debtor
 
 *166
 
 relief to avoid debts through technical compliance with bankruptcy provisions:
 

 Congress, however, has enacted specific legislation to correct this abuse, ... and the result in this case meshes with the congressional approach. Congress has generally excepted student loans from the discharge given under the auspices of the Bankruptcy Act. Since persons who have not received discharges of their student loans are not members of the certified class in this case, the result herein does nothing to disturb the general exception from the discharge provisions which Congress has conferred upon certain types of student loans.
 

 1 B.R. at 789.
 

 We do not read cases like
 
 In the Matter of Heath,
 
 3 B.R. 351 (Bkrtcy.N.D.Ill.1980), and
 
 In re Ware,
 
 9 B.R. 24 (Bkrtcy.W.D.Mo.1981), as contradicting the proposition that a Chapter 7 debtor cannot seek relief under § 525 when his college withholds a transcript to seek repayment of a non-discharged, overdue loan. In each of those cases, the debtor had filed a composition plan which had been approved by the bankruptcy court under Chapter 13. Under such a plan, the debtor develops a schedule of payments as part of a good-faith effort to reimburse creditors to the best of the debt- or’s ability. The provisions of a confirmed plan bind the debtor and each creditor, and, after completion by the debtor of all payments under the plan, the bankruptcy court normally discharges all debts provided by the plan or disallowed under the Bankruptcy Code.
 
 [4]
 
 11 U.S.C. §§ 1327-28 (Supp. V 1981). Between approval of the plan by the bankruptcy court and confirmation, the debtors in
 
 Heath
 
 and Ware were denied a copy of their transcripts by their universities. In each instance, the bankruptcy court held after the Chapter 13 plan had been performed and confirmed that the schools could not withhold a transcript as a means of forcing collection of a debt scheduled for discharge under § 1328.
 

 The distinction between
 
 Heath
 
 and Ware and the case presented by Johnson is patent: the debts owed by
 
 Heath
 
 and Ware were dischargeable and, in fact, had been discharged; the debt Johnson owes Edin-boro College is not dischargeable. Consequently, we can find no basis in the Bankruptcy Code to nullify Edinboro State’s policy of withholding transcripts from those students who have made no payments on their educational loans, have not approached the college to arrange a more flexible repayment schedule, and have not had their debts discharged.
 
 [5]
 

 IV
 

 Accordingly, the judgment of the district court will be reversed, and the case will be remanded to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.
 

 [1]
 

 . Johnson signed a repayment schedule for these loans. The instruments containing that schedule show that interest at the rate of 3% would accrue as of November, 1975; the first payment was due on January 1, 1976.
 

 [2]
 

 . The Court appointed Nathan B. Feinstein, Esq.
 
 amicus curiae
 
 and would like to express its appreciation to Mr. Feinstein for the exceptionally fine brief he submitted.
 

 [3]
 

 . Section 525 makes it illegal for a governmental unit to
 

 deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debt- or under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
 

 11 U.S.C. § 525 (Supp. V 1981).
 

 [4]
 

 . The discharges permissible under Chapter 13 are broader than those under Chapters 7 and 11. Upon performance of a Chapter 13 plan, the only exceptions to discharge are alimony, maintenance, or support owed to a former spouse, and certain long-term debts. 11 U.S.C. § 1328 (Supp. V 1981). Thus, a debtor who obtains credit through fraud or dishonesty, and whose debt would not be dischargeable in Chapter 11 or Chapter 7, may still be discharged from the debt under § 1328.
 
 Memphis Bank & Trust Co. v. Whitman,
 
 692 F.2d 427, 428-29 (6th Cir.1982). Congress intended the broader discharge to act as an incentive to debtors to complete performance under their Chapter 13 plans. Accordingly, the bankruptcy court held in
 
 In re Syrus,
 
 12 B.R. 605 (Bkrtcy.D.Kan.1981), that an educational loan which was not dischargeable in Chapter 7 or Chapter 11 was dischargeable in a successful Chapter 13 plan under § 1328.
 

 [5]
 

 . We can find only one case,
 
 University of Alabama v. Howren (In re Howren),
 
 10 B.R. 303 (Bkrtcy.D.Kan.1980), which is inconsistent with the view that colleges may withhold transcripts from debtors whose educational loans are not dischargeable under Chapter 7. For the reasons outlined above, we decline to subscribe to the position expressed by the
 
 Howren
 
 court that a contrary holding would contravene the fresh-start policy of the Bankruptcy Code. See
 
 In re Brinzer,
 
 21 B.R. 545 (Bkrtcy.S.D.W.Va.1982).