**In re Edward J. DEMBEK and Janice M. Dembek, Debtors.**

**Bankruptcy No. B86–01286.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Sept. 3, 1986.

Beatrice D. Linz, Elyria, Ohio, for debtors.

Roy A. West, West, West, Sherman & Petroff, Elyria, Ohio, for Sheffield-Sheffield Lake Bd. of Educ.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter came on for hearing upon the motion of Edward J. Dembek and Janice M. Dembek (Debtors) for an order upon the president of the Sheffield-Sheffield Lake Board of Education (Sheffield District) to appear and show cause why he and said Board of Education should not be held in contempt for their refusal to provide the Debtors with a transcript of their minor son's school records, in violation of Sections 362(a)(6) and 525 of the Bankruptcy Code. The Debtors, consequently, moved the Court for an order which would compel the school board president to turn over a copy of said Transcript to the Debtors.

Upon the receipt of testimony and a review of the record in this matter, the following findings of fact are hereby made pursuant to Bankruptcy Rule 7052:

The Debtors caused to be filed their joint petition for relief under Chapter 7 of the Bankruptcy Code on May 2, 1986. Among their creditors listed on their schedule A–3, the Debtors included the Brookside School which is located in Sheffield, Ohio. This prepetition indebtedness was incurred at a time when their minor son, Scott Dembek, (Scott) was age 14 and the Debtors desired that he attend Brookside School which was located in the Sheffield District. As the Debtors were then residents of the Lorain School District, enrolling their son at Brookside necessarily required them to incur a non-resident tuition expense payable to the Sheffield District. Scott attended Brookside for two years, with tuition rate set at $700.00 per year. He was the first non-resident student admitted to enroll in the Sheffield District. The first year's tuition fee for Scott's enrollment was fully paid by the Debtors in the amount of $700.00. Only some $110.00 were paid by the Debtors for tuition during the second year of Scott's enrollment. The balance of $590.00 was subsequently scheduled by the Debtor's on their schedule A–3, upon the commencement of these proceeding.

At the instance of the Debtors, a letter was sent to the Sheffield District seeking permission for Scott to enroll at Brookside. Upon the Debtors' receipt of a positive written reply, their son, was admitted. Neither the Debtors nor their son were required to execute a formal agreement to effect this arrangement with the Sheffield District. The Sheffield District made no direct contacts with the Debtors to collect the unpaid tuition since the filing of the Bankruptcy Petition.

Subsequently, after two years enrollment at Brookside, the Debtors relocated, with their son, to the Oberlin School District. Thereupon, their son was timely enrolled in the 11th grade for the 1985–86 school year. Upon completion of his junior year, the Debtors received a letter from the Oberlin School District informing them that their son had not been promoted to senior standing, and that his graduation was in jeopardy due to his previous school's (Brookside's) refusal to release his prior grades and credits unless the delinquent tuition fees were paid. The present motion ensued.

The Debtor's contend that the refusal of the Sheffield District to forward their son's transcript to the Oberlin District in order for him to complete his senior year is an impermissible attempt to collect upon a debt in violation of Sections 362(a)(6) of the Bankruptcy Code, as well as proscribed governmental discrimination based upon their bankruptcy status in violation of Section 525 of the Bankruptcy Code. On the other hand, the Sheffield District avers that its refusal to forward the subject transcripts is compliant with the law of the State of Ohio, and further contends that any efforts to collect the unpaid tuition are not directed at the Debtors, but rather, at their son who was the recipient of the education and a non-debtor in these bankruptcy proceedings.

A proper determination of this issue requires not only an examination of the Code, but also relevant state law and related policies. In defense of its refusal to release the subject records, the Sheffield District primarily relies on its own adopted policies.[1] Sheffield's policy denoted as "J.R." generally concerns an authorized fee to be charged for transcript servicing. The policy designated as "J.S." generally allows for fees and fines to be charged for "use and/or misuse of educational supplies, materials, or equipment", pursuant to relevant provisions of Ohio Rev.Code Ann. Sections 3313.64 and 3329.06 (Page 1985) (O.R.C). Policy "J.S." also authorizes the withholding of grades and credits until such time "said fees and fines" are paid in full (unless there is financial hardship as determined by the guidance counselor and/or principal). Finally, there is a policy denoted as "J.D.A." which sets forth a detailed student code of conduct for Sheffield District students. Among numerous catego-

---

1. Policy "J.R.", adopted March 16, 1981, as further amended February 21, 1983; Policy "J.S.", adopted August 21, 1978; Policy "J.D.A.", adopted February 19, 1979.

ries of required conduct, one category is entitled "Penalties", with a sub-section entitled "Withholding of Grades and Records". Specifically, that subsection on page 5 of policy J.D.A. reads:

"A student whose fees for laboratory fees, library fines, lost and damaged books, and other debts that are unpaid may be prohibited from taking his final exams or from receiving grades or grade records until the fees are paid in full (unless there is financial hardship as determined by the guidance counselor and/or building principal)."

The only other policy category relating to a withholding of a student's document is found on the last page of Policy J.D.A. (p.11). That particular reference addresses graduation requirements, and paragraph No. 5 provides that:

"5. Any student failing to fulfill any monetary or other obligation to the school will have the actual diploma withheld until such time that all requirements have been met."

In relying upon its policies, Sheffield District correctly notes that policy making is clearly authorized by the Ohio Revised Code. No where is this point contested in these proceedings, and the Court has thoroughly reviewed each policy exhibited by Sheffield District. Sheffield further points out that the State of Ohio has a compulsory educational law. Again, this fact is unchallenged; however, there is pertinent language in O.R.C. Section 3321.03 which directly impacts upon the matter at bar. Therein, we find language that states, "The *parent* of a child of compulsory school age *shall cause such child* to attend a school under division (B) of section 3313.-64....Every child of compulsory school age shall attend a school.... that conforms to the minimum standards prescribed by the state board of education...." O.R.C. 3321.03 (Emphasis added). The language of 3321.03 unequivocally places the responsibility for a child within the compulsory

school age upon the parent to ensure that such child is enrolled in an appropriate school district.[2]

Further, it is well-settled in Ohio that children may attend the schools of the school district in which the child resides. O.R.C. 3313.64(B). Admission to school districts where the child does not reside is also permissible (*Id.*). Such admission is allowed in the discretion of the non-residential school district when the reason for such attendance does not fit into one of the categories specified by statute. O.R.C. Section 3327.06. Section 3327.06 of the Ohio Revised Code has greater significance for the instant matter as it allows a non-residential school district to charge a tuition for the non-resident student:

"Such board shall collect tuition for the attendance of such pupil from the parent or guardian of the pupil, and the amount of tuition collected shall be in the manner prescribed by Section 3317.08". O.R.C. Section 3327.06. (Emphasis added).

Not only does this statutory provision mandate that the tuition charged be collected from the parents, another authority cited by the Sheffield District in its brief in opposition clearly provides that the parents are the responsible parties for payment:

The board of education of any city, exempted village, or county school district, is authorized to admit pupils who are residents of other school districts, either under contract with the district or residence or by *agreements with the parents* of such children. When any board of education admits to its school any non-resident pupil for whose attendance tuition is not an obligation of the district of the pupil's residence, the board must collect tuition for the attendance of such pupil from the *parent or guardians. Baldwin's Ohio School Law*, Section 67.-07, citing, O.R.C. 3313.64, 3317.08, 3323.-13, 3323.14, 3327.04 and 3327.06. (Emphasis added).[3]

---

2. The compulsory school age in Ohio is addressed at O.R.C. 3313.64(B).

3. *See also, Baldwin's Ohio School Law*, § 65.10: "A board of education may admit to its schools a child it is not required by O.R.C. 3313.64 to

■ From the above-stated statutory provisions, it becomes patently clear that the Sheffield District seeks to circumvent an unambiguous statutory mandate which requires tuition for non-resident students to be collected from parents or guardians. Sheffield's contention that O.R.C. Section 3313.642 gives it authority to enforce the payment of fees and charges by withholding grades and credits is wholly without merit. The "withholding" referred to in Section 3313.642 for fees and charges specifically refers to a payment enforcement method regarding "materials used in a course of instruction" and for the "loss, damage, or destruction of school apparatus, equipment, musical instruments, library material, textbooks ` required to be furnished without charge, and for damage to school buildings". The language of Section 3313.642 makes no reference directly or indirectly to tuition payments.

■ Sheffield District further argues that each board of education has the management and control of all public schools within its district, correctly citing to O.R.C. 3313.47. That averment is irrelevant to a determination of the present issue and is unchallenged. Moreover, Sheffield argues that the combined effect of O.R.C. Sections 3313.642 and 3313.47, allowed it to promulgate a policy which gave it authority to withhold the Transcript in the present matter. An examination of Sheffield's policies J.R. and J.S. does not support that contention. Policy J.R. generally authorizes a fee for transcript servicing, and policy J.S. allows for fees and fines to be assessed for the use or misuse of educational supplies, materials or equipment. Policy J.S. further allows for a withholding of grades and credits until "such fees and fines" are paid in full. Again, it is most apparent that neither the relied upon statutory provisions nor these referenced policies support a withholding of records based upon unpaid tuition. The in-court testimony of the Sheffield District superintendent revealed that the policies were adopted for the students in the District. That being

true, it becomes inconceivable that the District would construe "fines and fees" to include tuition, where only that interpretation would affect the Debtors' son, since he was the only non-resident student in the District at the subject time periods. It is recognized, however, that the policy language of Policy J.D.A. is more encompassing. That policy authorizes the withholding of grades and records for a student whose laboratory fees, library fines, lost and damaged books, "and other debts" which are owing to the District. Notwithstanding, that policy must be contrued in the clear light of O.R.C. 3327.06, which provides forthrightly that despite its grant of authority to individual school boards to form policy for all pupils, tuition for non-resident pupils is to be paid for by parents or guardians—not pupils. The force and effect of a statutory provision is greater than that accorded to a policy which, purportedly, was adopted in pursuance of such statutory provision. Further, Section 362(a)(6) of the Code provides in relevant part:

"362. Automatic Stay:

(a) Except as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title.... operates as a stay, applicable to all entities of

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

■ It was the Debtors' minor son who was enrolled in the Sheffield District during the 1983–84 and 1984–85 school years. It was the Debtors who requested and were given permission by the Sheffield District to enroll their son as a non-resident student. The Debtor's paid their son's tuition, except for the balance scheduled on their schedule A–3 at petition filing. There existed no agreement, written or otherwise, for the Debtors minor son to bear this financial responsibility. The fact that the Sheffield District did not seek payment directly does not negate this Court's finding that its indirect conduct was coercive and

admit, if tuition is paid *for* the child." (Emphasis added)

violates the automatic stay provisions of Section 362(a)(6). As the court stated in *In Re Johnson*, 8 B.R. 371 (Bankr.Minn.1981), Congress did not limit an act to affirmative actions. A refusal or failure to take action is an act. Here, as was found in *In Re Lanford*, 10 B.R. 132 (Bankr.D.Minn.1981), Sheffield District's sole purpose in withholding the subject transcript of records was to collect a prepetition debt of the Debtors, and the use of such coercive tactic was the precise ill the Congress desired to remedy. Moreover, the Supremacy Clause prevents a state from frustrating even the spirit of the federal law. *Handsome v. Rutgers University*, 445 F.Supp. 1362, 1367 (D.N.J.1978). As the Debtors petition under Chapter 7 was filed on May 2, 1986, such debt clearly arose before the commencement of these proceedings, and the collections thereof, by any means, is proscribed by Section 362(a)(6). (*In re Ware*, 9 B.R. 24, 25 (Bankr.W.D.Mo.1981).

■■■ The Sheffield District's position that it pursued the Debtors' minor son as "the parents are no longer collectible", is not well-founded under applicable law as heretofore stated. (Sheffield's Brief at p. 3) Similarly, Sheffield District's attempt to justify its withholding of the subject transcript based on an "implied contract" with the Debtor's minor son must also fail. As the state law referenced herein provides, the Sheffield District cannot rely upon any state law for the justification of a contractual relation with a student. It is well-settled that, among other prerequisites, a binding contract requires mutuality of assent. On this point, the Court heard unopposed testimony to the effect that the minor son of the Debtors had no desire to enroll in the Sheffield District, but rather the testimony revealed it was the parent's desire.[4] Resultingly, all arguments of Sheffield District to hold the minor liable

for non-residential tuition must fail, as they are nothing short of subterfuge to collect from the Debtors. Congress has clearly prohibited the use of non-legal, informal means of inducing debtors in a bankruptcy proceeding to make payments. *In Re Lanford, supra.*

■■■ The conduct towards the Debtors by the Sheffield District is also violative of Section 525 of Title 11 U.S.C. That code provision allows protection for the bankruptcy debtor, "... or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title ...". Sheffield District's conduct in attempting to collect from the Debtor's minor son, while believing that the Debtors were uncollectible, is squarely within the prohibited language of this provision. (*See, In Re Heath*, 3 B.R. 351, 353 (Bankr. N.D.Ill.1980). The fresh start purpose of bankruptcy not only discharges permissible financial obligations of debtors, but when combined with exemption provisions, provides means for a debtor to support a family as well. (*See, In Re Keyworth*, 47 B.R. 966, 975 (D.Colo.1985).

### CONCLUSION

The withholding of the Debtors son's transcript of records by the Sheffield District is violative of Sections 362(a)(6) and 525 of the U.S. Bankruptcy Code. Said School District is hereby ordered to immediately turn over to the Debtors or to the Oberlin School District a transcript of the school records pertaining to Scott Dembek, the Debtors' minor son, upon the payment of any customary processing fee. Judgment is further assessed against the Sheffield-Sheffield Lake School District for reasonable attorney fees and costs incurred by the Debtors as a result of this action. Any failure to adhere to this Order will result in

**4.** Even if we were to find that a contract existed between the son and the school district, to which we are not so inclined, such contract would be voidable based upon infancy, as the Debtors' son was under age 18 at all times while attending Brookside School. An exception is made for "necessities"; however no evidence

addressed this exception. Scott was admitted at his parents' preference and at the discretion of the Sheffield District, therefore vitiating any indication of "necessity". *Ballinger v. Craig*, 950 Oh.App. 545, 546; 121 N.E.2d 66 (1953); *Mestetzko v. Elf Motor Co.*, 119 Ohio St. 575, 592; 165 N.E. 93 (1929).

the immediate issuance of a show cause order for the purpose of addressing appropriate sanctions.

IT IS SO ORDERED.