**In re James SCROGGINS and Victoria Scroggins, Debtors.**

**James SCROGGINS and Victoria Scroggins, Husband and Wife, and as Natural Guardians for Candance Scroggins Their Minor Daughter, Plaintiffs,**

v.

**THE ROMAN CATHOLIC CHURCH OF DIOCESE OF PHOENIX, an Arizona corporation, dba Xavier College Preparatory, Defendant.**

**Bankruptcy No. B–96–09972–PHX–RGM. Adversary No. 97–00275.**

United States Bankruptcy Court, D. Arizona.

June 12, 1997.

Ronald J. Ellett, Phoenix, AZ, for Debtors/Plaintiffs.

Gregory J. Leisse, Diocesan Attorney, Church of Phoenix, Phoenix, AZ, for Defendant.

ORDER GRANTING EXPEDITED MOTION FOR TURNOVER OF HIGH SCHOOL TRANSCRIPTS AND REQUIRING THE IMMEDIATE RELEASE OF TRANSCRIPTS (CORRECTED)

ROBERT G. MOOREMAN, Bankruptcy Judge.

This matter is before the Court pursuant to Debtors' Expedited Motion to Compel Turnover of High School Transcripts and the Roman Catholic Church of the Diocese of Phoenix, dba Xavier College Preparatory's (the "Diocese" or "Xavier") Response thereto. An expedited hearing was held May 21, 1997 after which the matter was taken under advisement. After due consideration of the pleadings, the record herein, and under the present posture of the case, the Court finds and concludes the following in making its decision.

1. The Debtors filed their Chapter 13 Bankruptcy petition on September 17, 1996 pro se.

2. The Debtors' Bankruptcy case was dismissed on December 19, 1996 for failure to pay the filing fee installments and failure to attend the 341 hearing.

3. Debtors moved to reinstate their Bankruptcy case on February 14, 1997.

Debtors paid the outstanding filing fees and requested that the 341 hearing be rescheduled. The Court reinstated the Bankruptcy case on February 19, 1997.

4. The Debtors have filed their Schedules, Statement of Affairs and a Chapter 13 Plan of Reorganization. A hearing on the confirmation of Debtors' Plan scheduled for February 18, 1997 was vacated when the Bankruptcy case was dismissed on December 19, 1996. The hearing on the confirmation of Debtors' Plan of Reorganization has not been re-set after reinstatement and Debtors are now represented by counsel.

5. The Debtors filed an Adversary Complaint on May 1, 1997 seeking turnover of high school transcripts for their minor daughter (age 17), Candace Scroggins.

6. The Debtors filed a Motion for Turnover and Request for an *Expedited Hearing* on May 14, 1997. Debtors urged the Court to hold an expedited hearing on the turnover of the transcripts because their minor daughter's high school graduation from Sunnyslope High School will be delayed as a result of the Diocese's continued refusal to release Debtors' daughter's Xavier High School transcripts. Debtors argue that the refusal to release the transcripts is a violation of the automatic stay.

7. The Court granted the Motion for an Expedited Hearing and set the matter on Wednesday, May 21, 1997 at 1:30 p.m.

8. The Debtors' minor daughter attended Xavier during her entire sophomore year and during the fall semester of her junior year. The amount which is owed to the Diocese by the Debtors is $993.00, which represents the unpaid balance for the Debtors' daughter's fall semester of her junior year of high school.

9. The Diocese filed a 7 page response and additional exhibits on May 21, 1997, the day of the expedited hearing. At the hearing the Diocese argued that the Motion to Compel Turnover is procedurally improper and violates due process because the Diocese has not been given an opportunity or sufficient time to file a responsive pleading to the Adversary Complaint. The Diocese contends that an expedited hearing should not have

been granted because the Debtors' Chapter 13 case had been filed more than 8 months ago and had been dismissed and then reinstated and that the Debtors' conduct resulting in delays in the case should not be the basis of an expedited hearing. The Diocese also argues that an educational institution has a right to withhold a student's transcripts if the student has not met the financial obligations or had those obligations discharged. The Diocese also argues, even if the Court were to find that a school is not permitted to withhold the student's transcripts upon the failure of the student to meet the financial obligations, this result would create a substantial burden on the exercise of religious rights and therefore the provisions of the Religious Freedom Restoration Act, 24 U.S.C. § 2000bb *et seq.* apply to the Bankruptcy case and therefore the exceptions to the Act would have to be met before the Court could order the release of the transcripts.

The Court finds and concludes that an expedited hearing on this matter is proper. As stated, the Debtors filed their Adversary Complaint on May 1, 1997 and their Motion to Compel Turnover and Motion for Expedited Hearing on May 14, 1997. The Defendants filed a 7 page Response, with extensive exhibits, on the day of the expedited hearing, and an opportunity for oral argument was granted.

■ There is an impending deadline for the Debtors' minor daughter to meet the requirements for her high school graduation and the transcripts in issue are necessary for the Debtors' 17 year old daughter to meet the requirements for graduation at Sunnyslope High School. The Court finds and concludes that adequate notice has been given of the Motion and the Expedited Hearing. The Court therefore finds and concludes thereon that an expedited hearing is deemed necessary and proper based upon the undisputed facts and circumstances of this matter.

■ A large number of cases stand for the proposition that a college or educational institution violates the automatic stay imposed by 11 *U.S.C.* § 362 if the institution withholds a debtor's transcripts because the debt-

or is in default on a pre-petition debt. *See Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir.1992); *California State Univ. v. Gustafson (In re Gustafson)*, 111 B.R. 282 (9th Cir. BAP 1990) (*rev'd on other grounds* 934 F.2d 216 (1991)); *Virginia Union Univ. v. Parham (In re Parham)*, 56 B.R. 531 (Bankr.E.D.Va.1986); and *Lanford v. Macalester College (In re Lanford)*, 10 B.R. 132 (Bankr.D.Minn.1981). An educational institution's stated policy of withholding transcripts from a defaulting student is a debt collection mechanism. *Gustafson*, 111 B.R. at 286–87 (*citing Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 743 (9th Cir.1987) *cert., denied*, 488 U.S. 875, 109 S.Ct. 192, 102 L.Ed.2d 162 (1988)). In each of the above referenced cases, the Debtor was also the student requesting the transcripts and the institutions in question were colleges and universities. In the case at bar, the student is the minor child of the Debtors and the institution that is withholding the transcripts is a religious high school.

The Diocese relies on the case of *Najafi v. Cabrini College*, 154 B.R. 185 (Bankr. E.D.Pa.1993), for support of its position that it may withhold the high school transcripts of Debtors' minor daughter until the delinquent tuition is paid. *Najafi* stands for the proposition that a university may continue to withhold a student's college transcripts without violating the automatic stay imposed by 11 U.S.C. § 362 until either the tuition is paid, or adequate protection is provided. *Najafi* 154 B.R. at 193–94. The Court finds and concludes that *Najafi* is neither controlling in this district, nor is it persuasive or on point to the facts in this case.

■ The Court herein relies upon the case of *In re Dembek*, 64 B.R. 745 (Bankr. N.D.Ohio 1986), which appears to be directly on point. In the *Dembek* case, an Ohio Bankruptcy Judge held that a school district could not withhold the high school transcripts of a debtor's minor son until the debtor paid the pre-petition debt owed to the school district. *Id.* at 749–50. The Ohio court concluded, in accord with the those cases cited above, that the collection of the pre-petition debt through the coercive action of withholding transcripts is a violation of the automatic stay. *Id.*

■ In the case at bar, Xavier is withholding the high school transcripts of the Debtors's minor daughter in an attempt to collect the pre-petition debt incurred by the Debtors. The Court finds and concludes that Xavier's actions violate the automatic stay imposed by 11 U.S.C. § 362 because the educational institution is attempting to collect on a pre-petition debt after the commencement of the Chapter 13 Bankruptcy case. The undisputed material facts are that counsel for the Defendant attended the rescheduled first meeting of creditors and has continued to refuse to release the transcripts. The Court finds and concludes on this record that the Defendant's violation of the automatic stay occurred with knowledge of the filing of the Bankruptcy case.

The Diocese argues that the Bankruptcy Court cannot require it to release the transcripts because of the Establishment Clause of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act of 1993 ("RFRA" or the "Act") 42 U.S.C. §§ 2000bb *et seq.*[1] Defendant argues that under the RFRA the government may not substantially burden a person's exercise of religion unless the government demonstrates that application of the burden: (1) is in furtherance of a compelling govern-

---

1. The Act provides in part:
Free Exercise of religion protected
(a) In general—Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
(b) Exception—Government may substantially burden a person's religion only if it demonstrates that application of the burden of the person—
  (1) is in furtherance of a compelling governmental interest; and

  (2) is the least restrictive means of furthering that compelling governmental interest.
(c) Judicial relief—A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution. 42 U.S.C. § 2000bb–1.

mental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. The Diocese asserts that any ruling by the Bankruptcy Court which would prevent it from collecting the delinquent tuition pursuant to the stated policies of a religious school would impose a substantial burden on the exercise of religious rights and would have to meet the two-part test contained in the Act in order for the RFRA exception to apply to this case. The Court would therefore have to find that the nullification of the tuition policies advances a compelling governmental interest and is in the least restrictive means of advancing that compelling interest.

The Court finds and concludes that the Diocese's position and reliance on the RFRA is not well founded, nor is it supported by the applicable statute and/or case law. Initially, the Court notes some courts have found that the RFRA to be unconstitutional and therefore void because the Act violates the separation of powers doctrine in the United States Constitution. Further, at least two Bankruptcy courts have found that, although the RFRA would appear to restrict a Bankruptcy court from imposing a substantial burden on a debtor's religious practice, the Act is unconstitutional because it violates the Supreme Court's holding and interpretation of the proper constitutional standard to be utilized by the courts in analyzing Establishment Clause of the First Amendment cases and therefore the Act violates the separation of powers doctrine. *See In re Tessier,* 190 B.R. 396 (Bankr.D.Mont.1995); and *Fitzgerald v. Magic Valley Evangelical Free Church, Inc. (In re Hodge),* 200 B.R. 884 (Bankr.D.Idaho 1996).

However, the Court finds and concludes herein that in the event the RFRA does not violate the United States Constitution, that it does not apply to the facts of this case. The Diocese's position is that the release of the transcripts without the payment of the tuition would be a substantial burden and would therefore violate the RFRA. Assuming *arguendo* that the Act is valid, there must be a showing that there is some sort of substantial burden on a person's practice of religion before the Act becomes an issue and

before the Court will address whether the two-part exception to the Act has been met. 42 U.S.C. § 2000bb–1. The Diocese has failed to show or otherwise indicate which person under the Act would suffer a substantial abuse. Presumably, the Diocese argues that all of the other persons who support the Xavier High School will be substantially affected if the Court allows the transcript to be released. The total amount of the pre-petition debt owed to the Diocese is $993.00. The Debtors paid their daughter's tuition the full sophomore year and she apparently received grades for the two semesters that year; the transcripts for those semesters which the daughter attended and which the Debtors fully paid are also being withheld by the Diocese. It appears that the Debtors ceased payments to Xavier during the fall semester of their daughter's junior year. The Diocese claims that the Debtors' 17 year old daughter was not permitted to take final exams for the fall semester of her junior year and that she received incomplete grades for the courses during the fall semester of her junior year. The Court finds and concludes based on the material undisputed facts of this case and upon this record that the Diocese has failed to show that the release of this student's Xavier High School transcripts will create a substantial burden on any person's practice of religion and therefore, the RFRA does not apply in this case.

The Court finds and concludes that there is no valid legal basis for the high school to withhold the Debtors' daughter's transcripts and, because of the daughter's impending graduation, that cause exists for this court to order that the Diocese and/or Xavier to forthwith release the high school transcripts in question and to further so certify to this Court that they have complied with this Court's order.

Accordingly,

IT IS ORDERED that the Diocese and/or Xavier College Preparatory shall *immediately* turn over to the Debtors a transcript of the school records pertaining to the Debtors' minor daughter, Candace Scroggins, subject to any customary processing fee;

IT IS FURTHER ORDERED that the Diocese and/or Xavier College Preparatory

shall so certify to this Court that they have complied with this Court's order;

IT IS FURTHER ORDERED that the Court may consider the issue of sanctions for violation of the automatic stay upon a separate written motion which will not be set for hearing until after confirmation of Debtors' Chapter 13 Plan of Reorganization or the conversion of this case to another Chapter under the Bankruptcy Code.

IT IS SO ORDERED.