### In re Frances BILLINGSLEY, Debtor.

### No. 01–62685 (RTL).

United States Bankruptcy Court, D. New Jersey.

April 18, 2002.

---

Peter E. Zimnis, Trenton, NJ, for Debtor.

Edward L. Berger, Gordin & Berger, Philadelphia, PA, for Temple University.

*OPINION*

RAYMOND T. LYONS, Bankruptcy Judge.

Pursuant to an official university policy, Temple University refused to release the chapter 13 debtor's academic transcript because she defaulted on her student loan. The debtor filed a motion to compel Temple University to turnover the transcript, claiming that Temple's refusal to do so constituted a violation of the automatic stay. For the reasons set forth below, the court holds that where the student loan is concededly nondischargeable, a private educational institution does not violate the automatic stay by withholding the transcript of a student debtor who has defaulted on her loan.

This court has jurisdiction under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey, dated July 23, 1984, referring all cases under Title 11 of the United States Code to the bankruptcy court. Additionally, this is a core proceeding that can be heard and determined by a bankruptcy judge under 28 U.S.C. § 157(b)(2)(G) (automatic stay).

*FACTS*

In May 1987, the debtor, Frances Billingsley, borrowed $750.00 from Temple University through the Federal Perkins Loan/National Direct Student Loan Program. The debtor separated from the university in June 1988. Under the terms of her loan agreement, she was to begin repaying the loan in quarterly installments at 5% simple interest on December 1, 1988. The debtor never made any payments on the loan. Temple University, which maintains an official policy of withholding the academic records of students who do not fulfill their financial obligations, placed a financial hold on the debtor's records in

1989.[1]

On July 15, 1994, the debtor filed a chapter 7 bankruptcy petition and obtained a discharge by order entered July 1997. The parties agree that, because the debtor's educational loan was not in repayment status for seven years when the petition was filed, the debt to Temple University was not discharged in the chapter 7 case. On July 5, 2000, the debtor filed her first chapter 13 petition, and the court subsequently confirmed a plan. On the trustee's motion, the court dismissed the case on October 23, 2001 for failure to make payments. Shortly thereafter, the debtor requested that the University release her transcripts to St. Francis College, where the debtor hoped to continue her education. By letter dated October 31, 2001, Temple University advised the debtor that it deemed the debt nondischargeable following her chapter 7 case and asked her to establish a repayment schedule. Temple University did not release the debtor's transcript as requested. On November 8, 2001, the debtor commenced the instant case under chapter 13.

The debtor filed this motion on short notice to compel Temple University to release the transcripts to St. Francis College on the grounds that the University's refusal constitutes a violation of the automatic stay.[2]

### DISCUSSION

Pursuant to Section 362(a) of the Bankruptcy Code, a bankruptcy filing automatically stays, *inter alia*, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under this title," 11 U.S.C. § 362(a)(6). The issue before the court is whether a university violates this section by refusing to release the debtor's transcripts during her chapter 13 case because she defaulted on a student loan. As suggested by the debtor, numerous courts in other circuits have held that the Code, under § 362(a), § 525, or both, prohibits a university from withholding the transcript of a student-debtor who has defaulted on his or her educational loans. See, e.g., *Loyola University v. McClarty*, 234 B.R. 386 (E.D.La.1999); *In re Scroggins*, 209 B.R. 727 (Bankr.D.Ariz.1997); *In re Carson*, 150 B.R. 228 (Bankr.E.D.Mo.1993); *In re Merchant*, 958 F.2d 738 (6th Cir. 1992); *In re Gustafson*, 111 B.R. 282 (9th Cir. BAP 1990), rev'd. on other grounds 934 F.2d 216 (9th Cir.1991); *In re Parham*, 56 B.R. 531 (Bankr.E.D.Va.1986); *In re Reese*, 38 B.R. 681 (Bankr.N.D.Ga.1984); *In re Ware*, 9 B.R. 24 (Bankr.W.D.Mo. 1981); *In re Heath*, 3 B.R. 351 (Bankr. N.D.Ill.1980). The decision of this court, however, must be guided by the reasoning and conclusions of the Third Circuit Court of Appeals in *Johnson v. Edinboro State College*, 728 F.2d 163 (3d Cir.1984).

### I. *Johnson v. Edinboro State College*

In *Johnson*, a chapter 7 student-debtor sought a determination that Edinboro University's refusal to release a copy of his educational transcript violated the "fresh start" provision of the Bankruptcy Code. As in the instant case, the student-debtor made no payments on his student loan and, pursuant to a university policy, Edinboro

---

1. The University certified that it made numerous attempts from 1988 through 1992 to collect this debt; first on its own, then through First Wachovia, SFS, Inc., which serviced the loan, and finally through an outside law firm.

2. The debtor's papers fail to indicate the specific section of the Bankruptcy Code allegedly implicated by the university's actions. However, at oral argument, debtor's counsel relied solely upon cases holding that transcript-retention constitutes pre-petition debt collection in violation of 11 U.S.C. § 362(a)(6).

withheld both the debtor's diploma and transcript. The bankruptcy court ordered the college to turn over the diploma and transcript, finding the college in violation of then-existing 11 U.S.C. § 525. On the debtor's appeal, the district court affirmed. The Third Circuit Court of Appeals reversed the decisions below, concluding that there was

> no basis in the Bankruptcy Code to nullify Edinboro State's policy of withholding transcripts from those students who have made no payments on their educational loans, and have not approached the college to arrange a more flexible repayment schedule, and have not had their debts discharged.

728 F.2d at 166. The Third Circuit ultimately held that a state university is not compelled to release transcripts to a chapter 7 student-debtor whose financial obligation to the institution was nondischargeable. 728 F.2d at 166.

Debtor's counsel argues that *Johnson* is distinguishable from the case before the court in two important respects: (1) *Johnson* was decided under the "fresh start" provision of the prior 11 U.S.C. § 525,[3] and (2) *Johnson* involved a chapter 7 case, and not a chapter 13 case. The court also notes that Johnson's debt to Edinboro was declared nondischargeable by the bankruptcy court; however, this last point of distinction was resolved at oral argument when counsel for the debtor conceded (and this court agreed) that the debtor's debt to Temple is nondischargeable under Section 1328(a).

## A. Fresh Start v. Automatic Stay

The considerations surrounding the transcript retention issue under both the automatic stay provision, 11 U.S.C.

§ 362(a), and the "fresh start" provision, 11 U.S.C. § 525, are essentially the same. As noted by the court in *In re Najafi*, 154 B.R. 185 (Bankr.E.D.Pa.1993), "many of the reported cases consider the two issues together, and every case either concludes that both Code sections have been violated by the college's actions or that neither section has been violated thereby." 154 B.R. at 193. In fact, courts routinely apply and discuss cases decided under the "fresh start" provision, such as *Johnson*, to transcript retention matters involving only Section 362(a). See, e.g., *In re Najafi*, 154 B.R. 185 (Bankr.E.D.Pa.1993); *In re Carson*, 150 B.R. 228 (Bankr.E.D.Mo.1993). The court therefore finds that this distinction has little or no effect on *Johnson's* value as precedent.

## B. Chapter 7 v. Chapter 13

Debtor's counsel also argues that the court's holding in *Johnson* was confined to chapter 7 cases. This court disagrees. Underlying the *Johnson* decision was the concept that "courts are bound by Congressional judgments that general bankruptcy policy give way to more specific policy considerations." 728 F.2d at 164. The court ultimately determined that the "fresh start" policy embodied in the Code must yield to Congress's clear and specific intent to bar the discharge of "educational loans like those Johnson received from Edinboro University." 728 F.2d at 164. At the time that the *Johnson* was decided (1984), only educational debts incurred by chapter 7 or chapter 11 debtors were presumptively nondischargeable under the Code. In 1984, Section 528(a)(8), rendered nondischargeable any debt "for an educational ... loan made ... under any program funded in whole or in part by a

---

**3.** In relevant part, 11 U.S.C. § 525 (Supp. V 1981) prohibited a governmental entity from discriminating against a debtor for failing to pay a debt that was dischargeable or actually discharged under the Code. 11 U.S.C. § 525 (Supp. V 1981).

governmental unit or nonprofit institution ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents ..." 11 U.S.C. § 523(a)(8) (West 1984). At that time, student loans were excepted from discharge in chapter 7 and chapter 11 cases.

In contrast, student loans could be discharged in a successful chapter 13 plan under then-existing 11 U.S.C. § 1328. Before 1990, 11 U.S.C. § 523(a)(8) was not incorporated into 11 U.S.C. § 1328. Thus, when the *Johnson* decision was rendered, an educational loan that was nondischargeable in chapter 7 could be discharged in a successful chapter 13 plan. The Third Circuit ultimately distinguished the case before it from contrary caselaw decided under chapter 13, specifically *In the Matter of Heath,* 3 B.R. 351 (Bankr.N.D.Ill. 1980), and *In re Ware,* 9 B.R. 24 (Bankr. W.D.Mo.1981), solely on this basis. See *Johnson,* 728 F.2d at 166 ("The distinction between *Heath* and *Ware* and the case presented by Johnson is patent; the debts owed by Heath and Ware were dischargeable; the debt Johnson owes Edinboro College is not dischargeable."). This distinction, however, no longer exists under the present Bankruptcy Code.

As amended by the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089 (1990) and by the Higher Education Amendments of 1992, Pub.L. No. 102–325, 106 Stat. 448 (1992), 11 U.S.C. § 1328(a)(2) now expressly incorporates 11 U.S.C. § 523(a)(8), thereby making student loans presumptively nondischargeable in chapter 13. See, generally, *In re Segal,* 57 F.3d 342, 346–347 (3d Cir.1995) (comprehensively describing the development of 11 U.S.C. § 523(a)(8)). Moreover, two relatively recent Third Cir-

cuit decisions have rendered it extremely difficult for a debtor to overcome the presumption of nondischargeability explicit in the Code. See *In re Faish,* 72 F.3d 298, 304–305 (3d Cir.1995); *In re Brightful,* 267 F.3d 324, 327 (3d Cir.2001) (In order to prove "undue hardship," a debtor must demonstrate that: (1) the debtor cannot maintain a minimal standard of living, (2) additional circumstances exist indicating that the debtor's current state of affairs is likely to persist, and (3) the debtor has made a good faith effort to repay). Thus, the policy considerations that informed the *Johnson* decision apply with equal force to chapter 13 cases filed under the present Code. Based upon the foregoing, this court cannot, as urged by the debtor, ignore the precedential shadow cast by the Third Circuit over this issue.

## II. *Section 362(a) Analysis*

■ Even assuming, *arguendo,* that *Johnson* is not controlling, this court does not believe that Temple University's refusal to release the debtor's academic transcript violates the automatic stay of § 362(a). As noted above, the filing of a bankruptcy petition automatically stays, *inter alia,* any act to recover a claim against the debtor that arose pre-petition. See 11 U.S.C. § 362(a)(6). Recognizing the weight of authority to the contrary, this court finds that, in light of the Supreme Court's ruling in *In re Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), and under basic contract principles, a university does not violate the automatic stay by withholding a transcript from a debtor who has defaulted on a concededly nondischargeable student loan.

■ The relationship between a university and a student is essentially contractual in nature.[4] See *Barker v. Trust-*

---

4.  Since Temple University is located in Penn-  sylvania, the court assumes that Pennsylvania

*ees of Bryn Mawr Coll.*, 278 Pa. 121, 122 A. 220 (1923); *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir.1998); *Gally v. Columbia Univ.*, 22 F.Supp.2d 199, 206 (S.D.N.Y.1998). The terms of a student-college contract may include statements of university policy presented in student manuals, registration materials, and the like. See *Mangla*, 135 F.3d at 83. In the instant case, it is undisputed that Temple University maintained an official policy of withholding the academic transcripts of students that have defaulted on their educational loans. The contractual agreement between the parties, then, can be stated thusly: upon the debtor's enrollment, Temple promised, *inter alia*, to create, maintain, and deliver a transcript reflecting the debtor's academic performance provided that the debtor fulfill certain obligations, including the timely repayment of student debt. The court interprets this motion not as an effort to compel the turnover of the debtor's property, but as an attempt to force Temple University to perform on its promise to create and distribute a student transcript. See *Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 742–43 (9th Cir.1987) (characterizing a college transcript as a service performed, rather than "property"). Viewed in this way, the instant situation is not unlike that faced by the Supreme Court of the United States in *In re Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

In *Strumpf*, Citizen's Bank placed an administrative hold on the checking account of a chapter 13 debtor who was in default on a loan. The debtor sought to hold the bank in contempt for violation of the automatic stay, arguing, in part, that the bank's actions constituted an act to compel payment of a pre-petition debt. The Court ultimately concluded that an administrative freeze, or a bank's refusal to pay on demand, was not a violation of the automatic stay. In so holding, the Court noted that a bank account consists of "nothing more or less than a promise to pay, from bank to depositor" and that the bank's withholding of funds was not an act in violation of the automatic stay, but "merely a refusal to perform on its promise." 516 U.S. at 21, 116 S.Ct. 286.

■ Similarly, Temple University's withholding of the debtor's transcript is merely a refusal to perform on a promise to create and deliver a record of the debtor's academic performance. Such conduct is wholly consistent with the very purpose of the automatic stay: "to maintain the status quo that exists at the time of the debtor's bankruptcy filing." *In re APF Co.*, 2001 WL 1820788, *4, 2001 Bankr.LEXIS 1298, *11 (Bankr.D.Del. 2001) (citing *In re Richardson*, 135 B.R. 256, 258–59 (Bankr.E.D.Tex.1992)). Furthermore, the parties agree that the debtor has failed to uphold her end of the bargain; that is, to timely repay her student debt. Outside of the bankruptcy context, the breach of a material term of an agreement by one party relieves the other party of its obligations. See *Berkowitz v. Mayflower Secur., Inc.*, 455 Pa. 531, 535, 317 A.2d 584 (Pa.1974); RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981). Thus, if the debtor had not filed for relief under chapter 13, she would have no right to compel Temple University to perform on its promise to create and distribute her academic transcript. The debtor should not enjoy greater rights under her contract inside of bankruptcy than she would enjoy outside of bankruptcy. See *In re Draughon*, 119 B.R. 927, 932 (Bankr. W.D.La.1990); *In re Baquet*, 61 B.R. 495, 497–98 (Bankr.D.Mont.1986). Thus, consistent with *Strumpf*, this court holds that

contract law applies in this case.

Temple University's refusal to perform on its promise is not a violation of the automatic stay.[5]

In reaching this conclusion, the court is acutely aware of the large number of cases outside of the Third Circuit holding that a college violates § 362(a)(6) by refusing to release a debtor's transcript because he or she defaulted on a student loan. See, e.g., *Loyola University v. McClarty*, 234 B.R. 386 (E.D.La.1999) (chapter 13) (continuation of pre-petition policy of withholding transcripts from students who have refused to repay loans constitutes a collection device); *In re Scroggins*, 209 B.R. 727 (Bankr.D.Ariz.1997) (chapter 13) (same); *In re Merchant*, 958 F.2d 738 (6th Cir. 1992) (chapter 7) (withholding student transcript violates Section 362(a)(6)); *In re Gustafson*, 111 B.R. 282 (9th Cir. BAP 1990), rev'd. on other grounds 934 F.2d 216 (9th Cir.1991) (chapter 7) (withholding student transcript "could serve no other purpose than to compel repayment" and therefore violates the stay); *In re Dembek*, 64 B.R. 745 (Bankr.N.D.Ohio.1986) (chapter 7) (the coercive tactic of withholding a student transcript is the "precise ill" that Section 362(a)(6) was designed to remedy); *In re Parham*, 56 B.R. 531 (Bankr.E.D.Va. 1986) (chapter 13) (withholding transcripts based upon a dischargeable debt violates Section 362(a)(6) and may give rise to civil contempt); *In re Reese*, 38 B.R. 681 (Bankr.N.D.Ga.1984) (chapter 13) (a university policy to withhold transcripts in an effort to collect an otherwise dischargeable student loan violates Section 362(a)); *In re Ware*, 9 B.R. 24 (Bankr.W.D.Mo.1981) (chapter 13) (denying a university transcript is a method used to force debt collection and therefore violates Section 362(a)(6)); *In re Lanford*, 10 B.R. 132 (Bankr.D.Minn.1981) (chapter 13) (withholding a student transcript is "no less coercive than the action of a creditor in badgering and harassing a debtor into paying a discharged debt."); *In re Howren*, 10 B.R. 303 (Bankr.D.Kan.1980) (chapter 7) (a university's refusal to release a student-debtor transcript violates the automatic stay provisions of Section 362(a)(6)); *In re Heath*, 3 B.R. 351 (Bankr.N.D.Ill.1980) (chapter 13) (withholding of a student transcript "undeniably falls within the scope of Section 362(a)(6) and clearly violates the automatic stay."). See Ana Kellia Ramares, Annotation, *Validity, Construction, and Application of Statutes, Regulations, or policies Allowing Denial of Student Loans, Student Loan Guarantees, or Educational Services to Debtors Who Have Had Student Loans Scheduled in Bankruptcy*, 107 A.L.R.Fed. 192 (2001). However, of those cases, only two, *In re McClarty*, 234 B.R. 386 (E.D.La.1999) and *In re Scroggins*, 209 B.R. 727 (Bankr. D.Ariz.1997), were decided after the Supreme Court rendered its landmark decision in *Strumpf*. Significantly, neither *In re McClarty* nor *In re Scroggins* addressed the implications of *Strumpf* on the transcript-retention issue. Rather, both decisions relied, without any serious analysis, upon the legion of pre-*Strumpf* cases

---

**5.** The court notes that a contrary holding— that the retention of a chapter 13 debtor's transcript for failure to repay loans violates the automatic stay—would create a loophole for the unscrupulous chapter 13 student-debtor. As described by Judge Russell in his dissent in *In re Gustafson:*

Because of a chapter 13 debtor's absolute right to dismiss the case under 11 U.S.C. 1307, a debtor could file a chapter 13 case and demand the transcripts from a university. If the university must promptly comply with the request, after receiving the transcripts the debtor may then immediately dismiss his case without having filed a plan or having made a single plan payment. *In re Gustafson*, 111 B.R. at 289, fn2 (Russell, J., dissenting). The conclusion reached by this court avoids the potential for such mischief.

standing for the proposition that a university's refusal to release a debtor's transcript for failure to repay student debt constitutes an attempt to collect a pre-petition debt in violation of Section 362(a)(6). See *In re McClarty,* 234 B.R. at 387; *In re Scroggins,* 209 B.R. at 730. Finding that the reasoning and holding of *Strumpf* apply to this issue, the court is not persuaded by the weight of contrary authority.

### Conclusion

Under basic contract law, a university is excused from delivering a transcript to a student who is in default under her student loan. It is not a violation of Section 362(a)(6) of the Code to refuse to release a transcript for such a student-debtor in a chapter 13 case. The court therefore denies the debtor's motion to compel Temple University to release her educational transcript to St. Francis College pursuant to 11 U.S.C. § 362(a).